UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTHONY HANNON,

                 Plaintiff,                                Hon. Janet T. Neff

v.                                             Case No. 1:11-CV-317

UNKNOWN WEDGE, et al.,

                 Defendants.

_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>.  (Dkt. #12).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this matter terminated.


## BACKGROUND

Plaintiff initiated this action on March 15, 2011, against the following Michigan Department of Corrections officials: (1) Unknown Wedge, prison guard; (2) E. Mendoza, prison guard; (3) Unknown Sprague, prison guard; (4) Unknown Gonzales, prison guard; and J. Parker, Chaplain. (Dkt. #1).  During the time period relevant to this action, Plaintiff was incarcerated in the Michigan Reformatory.  The following allegations are contained in Plaintiff's unverified[1] complaint.

_____

[1] Plaintiff's complaint contains a declaration that the statements on the first three pages (but only the first three pages) of the complaint are made "under the penalty of perjury."  (Dkt. #1 at 3).  This declaration, however, does not concern Plaintiff's factual allegations which are contained on pages 5-7 of his complaint.  Accordingly, the factual allegations in Plaintiff's complaint are not properly verified or made under the penalty of perjury.

As of August 20, 2010, Plaintiff was participating in Ramadan, a period in which Muslims fast during the daylight hours.  At approximately 8:15 p.m. that evening, Plaintiff exited the prison yard and returned to his assigned building.  As he entered the building, Plaintiff requested his "Ramadan meal bag."  Defendant Sprague responded by informing Plaintiff that no Ramadan meal bag was prepared for him because he had been observed "in the chow hall eating" which disqualified him from receiving a Ramadan meal bag.  Plaintiff then spoke with Defendant Gonzales who likewise refused Plaintiff's request for a Ramadan meal bag.

Plaintiff's subsequent requests for Ramadan meals were denied and on August 23, 2010, Plaintiff filed a prison grievance concerning the matter.[2]  On August 27, 2010, Defendant Mendoza interviewed Plaintiff regarding his grievance.  Mendoza denied Plaintiff's grievance and informed him that he would not be placed back on the list to receive Ramadan meals.  Plaintiff continued to not receive Ramadan meals.  On September 24, 2010, Plaintiff spoke with Defendant Parker who indicated that she made the decision to remove Plaintiff from the Ramadan meal list.

Plaintiff asserts that Defendants' refusal to provide him with Ramadan meals during the relevant time period violated his First Amendment rights.  Plaintiff also asserts that he was removed from the Ramadan meal list without benefit of a hearing in violation of his Fourteenth Amendment rights.  Plaintiff is seeking in excess of 2.6 million dollars in damages.  Defendants have all moved for summary judgment.

---

[2]  Plaintiff does not allege that any of the defendants in this action denied his requests for Ramadan meals during this subsequent three day period.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.        First Amendment

Plaintiff asserts that his First Amendment right to freely practice his religion was violated by the decision to remove him from the approved list to receive Ramadan bag meals.

It is well accepted that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Specifically, prisoners retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). Nevertheless, operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85. Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

Accordingly, when reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1.  there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2.  whether there are alternative means of exercising the right that remain open to prison inmates;

3.  the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4.  whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable

alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policies at issue are reasonably related to a legitimate penological interest. *Id.*

To establish that his right to freely practice his religion has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) the Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also*, *Bakr v. Johnson*, 1997 WL 428903 at *2 (6th Cir., July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"); *Barhite v. Caruso*, 2009 WL 440682 at *2 (W.D. Mich., Feb. 23, 2009). Defendants do not challenge Plaintiff's assertion that his removal from the approved list to receive Ramadan meals infringed on his religious beliefs. Defendants instead assert that Plaintiff's removal from the Ramadan meal program was reasonably related to a legitimate penological objective.

Defendant Jacob Wedge has submitted an affidavit in which he asserts that on August 20, 2010, he "directly observed prisoner Hannon eating in the chow hall dinner lines." (Dkt. #14, Exhibit J). Wedge confirmed his observation by speaking with an officer in Plaintiff's housing unit who confirmed that Plaintiff "was not in the housing unit." As Plaintiff's conduct violated MDOC policy, and because Defendant Wedge is not authorized to decide which prisoners are eligible to receive a particular religious accommodation, Wedge reported the matter to the facility's Chaplain. *Id.*

Defendant Jamie Parker has submitted an affidavit in which she asserts that during the time period relevant to this matter she was serving as the Acting Chaplain at the Michigan Reformatory. (Dkt. #14, Exhibit K). On September 24, 2010, Parker spoke with Plaintiff regarding the decision to remove him from the Ramadan meal program. Parker informed Plaintiff that she issued a Notice of Intent on August 22, 2010, directing that he be removed from the Ramadan meal program because he

was "observed eating in the chow hall during dinner lines" which constituted "breaking the Ramadan fast." *Id.*

Defendants have also submitted an affidavit executed by Michael Martin, who has been employed since April 20, 2008, as Special Activities Coordinator for the Michigan Department of Corrections. (Dkt. #14, Exhibit L). Martin's duties include "coordinating religious programming." According to Martin, "[d]uring Ramadan, Muslims who are physically/medically able to do so may fast. . .between dawn and sunset." Accordingly, "both a pre-dawn and post-sunset meal are provided by the facilities" to those inmates participating in Ramadan. As a result of this accommodation, the prisoners participating in Ramadan "are not to also appear in the meal line for regularly scheduled facility meals." If a prisoner is "observed violating the fast by eating from the meal line during a regularly scheduled facility meal," he may be removed from the special Ramadan meal program. Martin justifies removing from the Ramadan meal program prisoners who violate the fast thusly:

> The MDOC has compelling governmental interests in limiting the participation in Ramadan meals to those inmates who demonstrate sincerity by not violating the requirements of Ramadan. First, allowing prisoners who are not sincere to participate in the Ramadan meal is offensive to those who are sincere, and often leads to conflict between the prisoners and between groups of prisoners. Second, there is a compelling economic interest. Providing special Ramadan meals at special times requires extra effort and extra expense. That extra effort and expense should be reserved only for those for whom the meals are a religious requirement, and who demonstrate that they have enough knowledge to enable them to abide by the requirements of their faith. In addition to the logistical requirements of providing a special meal during. . .a specific, alternative meal time, allowing a prisoner to eat from the regular meal line and still receive a separate Ramadan meal would obviously increase the cost of feeding that particular inmate for that particular meal. It would also likely lead to conflict with inmates who are not provided with a second meal or with staff who are unable to provide a second meal for an inmate requesting it.

*Id.*

The concerns expressed by Martin are reflected in MDOC policy which provides that "[a] prisoner approved to eat from a religious menu shall have that approval rescinded if s/he eats, or has in his/her possession, any food item that violates a tenet of his/her designated religion."  Michigan Department of Corrections Policy Directive 05.03.150 ¶ VV (eff. September 20, 2007).

Plaintiff has failed to submit any evidence in response to Defendants' properly supported motion for summary judgment.  Plaintiff instead appears content to stand on the unverified assertions in his complaint.  Thus, the undisputed evidence reveals that Plaintiff violated MDOC policy as well as the requirements of Ramadan by eating in the prisoner dining hall.

Analysis of this matter leads the Court to conclude that Defendants are entitled to summary judgment.  There certainly exists a valid and rational connection between the MDOC's policy of removing from the special Ramadan meal program those prisoners who violate the fast and the legitimate governmental interests articulated in support of such.  Consideration of the remaining *Turner* factors also weighs in favor of Defendants.  Plaintiff was not prevented from practicing his faith in numerous other ways, but was instead simply prevented from practicing his faith in a manner that implicated legitimate security and economic considerations.  The undersigned, therefore, recommends that Defendants are all entitled to summary judgment as to Plaintiff's First Amendment claims.

The Court further recommends that Defendants Wedge, Mendoza, Sprague, and Gonzales are likewise entitled to summary judgment on the alternative ground that there is no evidence that they were involved in the decision to remove Plaintiff from the Ramadan meal list.  Defendant Parker asserted that she made the decision in question.  Defendants Wedge, Mendoza, Sprague, and Gonzales have all asserted in their affidavits that they did not participate in the decision to remove Plaintiff from the special Ramadan meal program.  Plaintiff has submitted no evidence to the contrary.  As is well

recognized, liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). The undersigned recommends, therefore, that Defendants Wedge, Mendoza, Sprague, and Gonzales are entitled to summary judgment on this alternative ground.

**II.        Fourteenth Amendment**

As previously noted, on August 22, 2010, Defendant Parker issued a Notice of Intent that Plaintiff be removed from the special Ramadan meal program because he was "observed eating in the chow hall during dinner lines" which constituted "breaking the Ramadan fast." A formal administrative hearing was not conducted on this matter, however. Plaintiff asserts that the failure to conduct a hearing before removing him from the Ramadan meal program violated his Fourteenth Amendment right to procedural due process.

Pursuant to the Due Process Clause of the Fourteenth Amendment, before depriving an individual of life or certain liberty or property interests the state must afford the individual with notice and an opportunity to be heard. *See Brentwood Academy v. Tennessee Secondary School Athletic Association*, 442 F.3d 410, 433 (6th Cir. 2006), *rev'd on other grounds*, 551 U.S. 291 (2007); *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). However, the Due Process Clause is not implicated by any and every deprivation of liberty or property, but instead applies only where an individual has been deprived of a *constitutionally protected* liberty or property interest. *See Brentwood Academy*, 442 F.3d at 433. The first step, therefore, in assessing whether Plaintiff suffered a violation of his procedural due

process rights is to determine whether he was deprived of a constitutionally protected liberty or property interest.

A constitutionally protected liberty interest exists only in circumstances in which an individual is subjected to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *see also, Bazzetta v. McGinnis*, 430 F.3d 795, 798 (6th Cir. 2005). As the *Sandin* Court further noted, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin*, 515 U.S. at 485. Accordingly, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.*

With respect to property interests, the procedural protections of the Fourteenth Amendment are not implicated where an individual possesses simply "an abstract need or desire" or a "unilateral expectation" of receiving a particular item or benefit. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *see also, Bauss v. Plymouth Township*, 2007 WL 1451977 at *6 (6th Cir., May 17, 2007). Rather, the individual must "have a legitimate claim of entitlement" to the item or benefit at issue. *Gonzales*, 545 U.S. at 756; *Bauss*, 2007 WL 1451977 at *6. Moreover, an individual cannot possess a constitutionally protected property interest in an item or benefit where "government officials may grant or deny it in their discretion." *Gonzales*, 545 U.S. at 756; *Bauss*, 2007 WL 1451977 at *7.

The deprivation presently at issue, removal from the Ramadan meal program for violation of a reasonable policy designed to further legitimate penological objectives, does not constitute a deprivation of a constitutionally protected liberty or property interest.  Plaintiff's removal from the Ramadan meal program neither restricted his physical liberty nor resulted in the imposition of an atypical and significant hardship relative to the ordinary incidents of prison life, as prisoners who fail to comply with legitimate prison policies can be expected to suffer a restriction of privileges.

Moreover, while the First Amendment protects Plaintiff's right to freely exercise his religion, Plaintiff enjoys no "claim of entitlement" to specifically participate in the Ramadan meal program.  The Ramadan meal program is merely an accommodation that the MDOC affords to certain prisoners.  As discussed above, however, MDOC officials may grant or deny this particular accommodation in their discretion if in pursuit of legitimate penological objectives.  The Court concludes, therefore, that Plaintiff has not been deprived of a *constitutionally protected* liberty or property interest.  Thus, Defendants are entitled to summary judgment as to Plaintiff's procedural due process claims.  However, even if the Court assumes that Plaintiff was deprived of a constitutionally protected liberty or property interest, the result is the same.

The fundamental requirement of procedural due process is the right to be heard "at a meaningful time and in a meaningful manner."  *Mertik v. Blalock*, 983 F.2d 1353, 1364 (6th Cir. 1993) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  The notion of due process does not necessarily require, however, compliance with a state's articulated procedures.  As courts recognize, such "would result in the constitutionalizing of every state rule" which the Constitution does not require. *Purisch v. Tennessee Technological University*, 76 F.3d 1414, 1423 (6th Cir. 1996); *see also, Anderson*

*v. Ohio State University*, 26 Fed. Appx. 412, 414 (6th Cir., Dec. 5, 2001) (allegation that university "violated its own rules and procedures" does not constitute a violation of procedural due process).

As previously noted, MDOC policy provides that "[a] prisoner approved to eat from a religious menu shall have that approval rescinded if s/he eats, or has in his/her possession, any food item that violates a tenet of his/her designated religion."  Michigan Department of Corrections Policy Directive 05.03.150 ¶ VV (eff. September 20, 2007).  This policy further provides that approval to eat from a religious menu "shall be rescinded only after a hearing is conducted. . .to establish the basis for that removal."  *Id.*  While there is no evidence that a formal administrative hearing was conducted regarding Plaintiff's removal from the Ramadan meal program, Plaintiff did pursue the matter through the administrative grievance process.  As part of the grievance process, Plaintiff was interviewed by prison officials and given the opportunity to articulate his position.  The Court finds that such was sufficient for purposes of the Due Process Clause.  Accordingly, for the reasons articulated above, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's procedural due process claims.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #12), be **granted** and this action terminated.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  December 2, 2011

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge